IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAR 19 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

SANDRA L. AGUILAR,                    )
2338 Tawny Drive                      )
Waldorf, MD 20601-5272                )
                                      )
         Plaintiff,                   )    Case: 1:07-cv-00546 **ACTION**
                                      )    Assigned To : Urbina, Ricardo M.
    v.                                )    Assign. Date : 3/19/2007
                                      )    Description: AGUILAR V. KEMPTHORNE
DIRK KEMPTHORNE                       )
Secretary of the Interior             )    **JURY TRIAL DEMANDED**
U.S. Department of the Interior       )
1849 C Street, N.W.                   )
Washington, D.C.  20240               )
                                      )
                                      )
         Defendant.                   )
                                      )

## COMPLAINT FOR DISCRIMINATION

1. Plaintiff Sandra L. Aguilar, by and through undersigned counsel, hereby files this civil action against Defendant Dirk Kempthorne, as head of the U.S. Department of the Interior, pursuant to Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks relief pursuant to Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for harms caused to Plaintiff when Defendant refused to select her for the position of Administrative Officer, GS-341-15 as advertised under Vacancy Announcement No. NPS-NCR-03-19 based on her race (Hispanic) and national origin (Mexican American).

2. Plaintiff requests as relief in this Complaint: Plaintiff requests any and all relief available under Title VII of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, and civil rights law, including but not limited to the following:

A. Retroactive placement into the position of Administrative Officer, GS-341-15, which she was unlawfully denied.

B. Full back pay and benefits commensurate with this position, with all applicable within-grade increases and interest from the date of non-selection, approximately July 2003.

C. Compensatory damages up to the maximum amount of $300,000 in an amount appropriate to the proof at trial.

D. The reasonable attorneys' fees, at prevailing market rates, and costs and expenses of bringing this case.

**PARTIES**

3. Plaintiff Sandra Aguilar, ("Ms. Aguilar" or "Plaintiff") a United States citizen, is a Hispanic female, whose national origin is Mexican-American. Ms. Aguilar timely

applied for the position of Administrative Officer, GS-341-15, advertised under Vacancy Announcement No. NPS-NCR-03-19. For the entire period relevant to this action, Ms. Aguilar has been residing at 2338 Tawny Drive, Waldorf, MD 20601-5272.

4. Secretary Dirk Kempthorne is being sued in his official capacity only, as head of the U.S. Department of Interior. His address is U.S. Department of Interior, 1849 C Street, N.W., Washington, DC 20240.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

6. Specifically, this Court has jurisdiction over this Complaint pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 2000e-16(d), and 42 U.S.C. § 1981a.

7. This Court is the proper venue pursuant to 42 U.S.C. § 2000e-5(f)(3). The position for which Ms. Aguilar applied is located in Washington, D.C. All of the discriminatory acts complained of took place in Washington, D.C. Furthermore, all records, documents, and virtually all the witnesses relevant to this Complaint are located in Washington, D.C.

8. The facts underlying Ms. Aguilar's Complaint were developed, through the investigation of her formal Equal Employment Opportunity ("EEO") discrimination complaint, Agency No. FNP-2003-064, filed on August 7, 2003. The compliant was investigated from August 15, 2003, through October 8, 2003.

9. Plaintiff received a Final Decision on this complaint from the Equal Employment Opportunity Commission on December 21, 2006. Thus she has exhausted her available administrative remedies. Ms. Aguilar is filing this Complaint within 90 days of receiving that decision. See 42 U.S.C. § 2000e-16(c).

## Ms. Aguilar's Qualifications

10. Ms. Aguilar is a highly qualified, very experienced Hispanic female, who has had a successful career in both the federal service and the private sector. Ms. Aguilar was employed for six years in high level positions with the Department of Health and Human Services ("HHS"), including the Office of Intergovernmental Affairs ("IGA"). While employed by IGA, she had several years of management experience.

11. From September 1998 through January 2001, Ms. Aguilar served as the Deputy Director for Operations, GS-301-15 for the IGA within the Office of the Secretary at the Department of

Health and Human Services. In that position, Ms. Aguilar's duties required her to serve as the Administrative and Budget Officer for the IGA headquarters office and ten regional offices. She had a full-range of budget responsibilities, including managing the budget, the headquarters office, and the ten regional offices of IGA.

12. Ms. Aguilar also administered IGA's entire recruitment and staffing needs, employee development needs, gave staff assignments; she monitored official communications, administrative documents, and materials having an impact on or relating to HHS intergovernmental activities and issues.

13. From October 1994 through September 1997, Ms. Aguilar was employed as the GS-14 Congressional Liaison for the U.S. Office of Consumer Affairs, a division of the White House. Her primary responsibilities were to ensure the Office received appropriations from Congress on an annual basis, advocate for and enlist support for legislation of benefit to consumers, and to reach out and form partnerships with state and local governments, as well as non-government organizations, such as corporations, small businesses, and community organizations.

## Non-Selection for the Position

11. Ms. Aguilar was subjected to a non-selection on the basis of her race (Hispanic) and national origin (Mexican American) for the position of Administrative Officer ("Associate Regional Administrator for Administration"), GS-341-15, as advertised under Vacancy Announcement No. NPS-NCR-03-19 ("Vacancy Announcement"). This position was located in Washington, D.C.

12. In March 2003, Ms. Aguilar learned from a website that the position of Administrative Officer, GS-341-15, with the NPS was being advertised under the Vacancy Announcement.

13. She reviewed each of the identified knowledge, skills, and abilities (hereinafter "KSAs") that were identified in the Vacancy Announcement as being relevant to the position. Based on her review of the KSAs and her knowledge of federal agency operations, she concluded that she was well-qualified for the position. The duties and responsibilities of the position were very similar to her GS-301-15 position from May 1998 through January 2001 with the Department of Health and Human Services.

14. The Vacancy Announcement provided that this position was only open to current career or career conditional employees

of the Department of the Interior. Ms. Aguilar would not qualify under this limitation.

15. However she knew that puruant to a Memorandum issued on February 12, 1999, by the Director of NPS, agency policy required that all positions at this level must be open to candidates from all sources. Thus she was determined to file an application for this position.

16. Upon inquiry, Ms. Aguilar learned that the current incumbent of the position had openly identified his successor as Ms. Dottie P. Marshall ("Ms. Marshall"), a current employee of the National Parks Services ("NPS"). Ms. Aguilar knew that preselection for vacancies was not consistent with the applicable merit promotion principles and thus she was not deterred from filing her application.

17. Ms. Aguilar prepared her application package in response to the Vacancy Announcement. In her application package, Ms. Aguilar carefully addressed each of the identified KSAs that were identified in the Vacancy Announcement. Ms. Aguilar also identified her relevant job experience, including her relevant work experience in a very similar GS-301-15 position with the Department of Health and Human Services.

18. On March 26, 2003, Ms. Aguilar filed her timely

application package, including all the required materials, with the NPS.

19. Her application was timely received by the appropriate office within the NPS. Her application was rated and ranked by the NPS. In fact, the NPS staffing specialists prepared at least six different certificates of eligibles for the position. Ms. Aguilar's name appeared on at least one of these certificates. However, she never received an interview for the position.

20. From April 2003 through July 2003, Ms. Aguilar periodically contacted the NPS concerning the status of her application and whether interviews had been scheduled. She was consistently told that the hiring process was ongoing. Only later did Ms. Aguilar learn that some candidates were interviewed for the position during the week of May 12, 2003.

21. On July 7, 2003, Ms. Aguilar learned that Ms. Marshall, the former incumbent's handpicked successor, had been selected for the position. The selection for this position was made by Terry R. Carlstrom, Regional Director, National Capital Region ("NCR"), SES Level 4.

22. Ms. Marshall's qualifications are inferior to those of Ms. Aguilar when measured against the identified KSAs. Each of

the five identified KSAs are general management skills for federal government agencies that are not peculiar to the NPS. Ms. Aguilar had performed all the functions of the vacant position in her duties with the IGA. Conversely, Ms. Marshall had never performed in a similar management position.

23. During the selection process, NPS applied five new criteria to the applications that were never mentioned in the Vacancy Announcement. NPS carefully filtered out all applicants from outside the agency by applying the following criteria:

a) current or prior NPS experience;

b) current knowledge of the issues facing the NCR and the local parks;

c) current or prior experience within the NCR;

d) current or prior experience within the NCR Parks; and

e) knowledge of the NCR budget.

24. The selection process was deliberately rigged to elevate Ms. Marshall and eliminate applicants with management experience that made them more qualified than Ms. Marshall for the actual duties of the position. Thus NPS manipulated the evaluation of the applicants by relegating the relevant KSAs to secondary considerations.

25. By applying these five criteria, NPS deliberately ignored Ms. Aguilar's management experience and overall superior qualifications. NPS only granted interviews to candidates that met these five criteria; yet these criteria were not directly related to performance of the duties of the position.

26. This action was inconsistent with applicable merit promotion principles. It represents a radical and unwarranted departure from the identified KSAs. The purpose was to exclude external candidates for the position, which is not permitted under applicable NPS policy.

### Systematic Under-representation of Hispanics

27. Ms. Aguilar's non-selection is the result of a systematic and chronic under-representation of Hispanics at higher levels of the DOI and specifically the NPS. This under-representation of Hispanics is not a result of a lack of highly-qualified Hispanic candidates with requisite job experience and education. It is the result of illegal barriers to the hiring of qualified candidates from outside the NPS.

28. The NPS workforce statistics for the period ending September 30, 2006, reveal that the NPS has 176 employees in positions that are GS-15 or Senior Executive Service ("SES").

There is not a single Hispanic female among these 176 employees at the GS-15 grade level or in the SES. It is readily apparent that the NPS has blocked highly-qualified Hispanic female applicants from obtaining positions at the GS-15 level and above.

29. Hispanic females are also under-represented among the 929 employees at the GS-13 and GS-14 levels. This type of under- representation is produced by the barriers that have been utilized by NPS to prevent qualified Hispanic females from being selected for these positions. This type of under-representation was addressed in Executive Order 13171, which noted that "Hispanics are under-represented in the Federal civilian workforce."

30. These trends are a reflection of a government-wide Hispanic representation crisis. In FY 2005, Hispanics comprised 13.5% of the civilian labor force while comprising only 7.4% of the federal workforce. Hispanics are the only minority group under-represented in the federal workforce; overall representation of all minorities in the federal workforce is actually higher than the proportion of minorities in the civilian labor force by 4.4%. The gap between the proportion

of Hispanics in the federal workforce and the civilian labor force has grown by 30% since 2000.

31. The proportional rate of hiring of Hispanics by the federal government is decreasing. In FY 2002, Hispanics were 9.5% of federal new hires; in FY 2005, they were only 8.3% of federal new hires.

32. The retention rates for Hispanics in federal service are appallingly low. The number of separations of Hispanic employees since 2001 has been roughly 45% as much as the number of new Hispanic hires during the same period.

33. Hispanics are grossly under-represented in senior executive positions. Hispanic representation at the Senior Pay Level has increased at a rate of only one tenth of one percent a year since 2000, from 3% to 3.5%. Hispanic career SES representation has actually decreased, from 2.5% in 2000 to 2.3 percent in FY 2005.

34. Given the GAO's projections for the retirement rate of senior executives, the under-representation problem will only become worse. By 2007, the current rate of hiring of Hispanics will be insufficient to keep up with the rate of retirement. If current trends continue, the number of Hispanics in career SES positions will decline to less than 140 government-wide.

35. The NPS's consistent utilization of barrier(s) to hiring qualified Hispanic females and its lackadaisical or non-existent implementation of Special Emphasis Programs, Executive Orders, laws and regulations guarantee that the proportion of Hispanic female employees in Agency will continue to remain grossly under-represented.

36. The Vacancy Announcement identified the KSAs that tracked the skill set required to perform the duties of the position. Originally the Vacancy Announcement limited eligibility to current DOI employees, which was contrary to applicable NPS guidelines and clearly discriminatory. NPS did formally open consideration to non-DOI employees. However, this was merely a facade. The selection process was subverted by the application of five unannounced and indefensible criteria that blocked any non-NPS employee from being considered for the position. The superior credentials of Ms. Aguilar were simply ignored and the less qualified Ms. Marshall was selected.

### CAUSES OF ACTION

#### Count I Non-Selection

37. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff

13

Sandra L. Aguilar because of her race (Hispanic) and national origin (Mexican American) by not selecting her for the position of Administrative Officer ("Associate Regional Administrator for Administration"), GS-341-15, as advertised under Vacancy Announcement No. NPS-NCR-03-19, in violation of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq.

**RELIEF REQUESTED**

38. Plaintiff requests any and all relief available under Title VII of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, and civil rights law, including but not limited to the following:

A. Retroactive placement into the position of Administrative Officer, GS-341-15, which she was unlawfully denied.

B. Full back pay and benefits commensurate with this position, with all applicable within-grade increases and interest from the date of non-selection, approximately July, 2003.

C. Compensatory damages up to the maximum amount of $300,000 in an amount appropriate to the proof at trial.

D. The reasonable attorneys' fees, at prevailing market

rates, and costs and expenses of bringing this case.

**JURY TRIAL**

39. Plaintiff requests a trial by jury on all issues that are triable by jury.

*[signature]*
MYRREL C. HENDRICKS, Jr.
(DC Bar No. 291781)
CHARLES W. DAY, Jr.
(DC Bar No. 459820)
GEBHARDT & ASSOCIATES, LLP,
1101 17th Street, N.W., Suite 807
Washington, DC 20036-4716
(202) 496-0400

March 19, 2007                     Attorneys for Plaintiff

15

CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Sandra L. Aguilar<br>2338 Tawny Drive<br>Waldorf, MD 20601-5272 | Dirk Kempthorne, Secretary of Interior<br>U.S. Department of Interior<br>1849 C Street, N.W.<br>Washington, D.C. 20240 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Charles County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Myrrel C. Hendricks, Jr.
Gebhardt & Associates
1101 17th Street, N.W.
Washington, D.C. 20036
(202) 496-0400

Case: 1:07-cv-00546
Assigned To : Urbina, Ricardo M.
Assign. Date : 3/19/2007
Description: AGUILAR V. KEMPTHORNE

### II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

○ 1  U.S. Government Plaintiff
● 2  U.S. Government Defendant
○ 3  Federal Question (U.S. Government Not a Party)
○ 4  Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL ...
(FOR DIVERSITY CASES ONLY!)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **C. Administrative Agency Review**

☐ 151  Medicare Act

**Social Security:**
☐ 861  HIA ((1395ff)
☐ 862  Black Lung (923)
☐ 863  DIWC/DIWW (405(g)
☐ 864  SSID Title XVI
☐ 865  RSI (405(g)

**Other Statutes**
☐ 891  Agricultural Acts
☐ 892  Economic Stabilization Act
☐ 893  Environmental Matters
☐ 894  Energy Allocation Act
☐ 890  Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**F. Pro Se General Civil**

| Forfeiture/Penalty | Other Statutes |
|---|---|
| ☐ 610 Agriculture | ☐ 400 State Reapportionment |
| ☐ 620 Other Food & Drug | ☐ 430 Banks & Banking |
| ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 450 Commerce/ICC Rates/etc. |
| | ☐ 460 Deportation |
| ☐ 630 Liquor Laws | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 640 RR & Truck | |
| ☐ 650 Airline Regs | ☐ 810 Selective Service |
| ☐ 660 Occupational Safety/Health | ☐ 850 Securities/Commodities/Exchange |
| ☐ 690 Other | ☐ 875 Customer Challenge 12 USC 3410 |
| | ☐ 900 Appeal of fee determination under equal access to Justice |
| **Federal Tax Suits** | ☐ 950 Constitutionality of State Statutes |
| ☐ 870 Taxes (US plaintiff or defendant) | ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act) |
| ☐ 871 IRS-Third Party 26 USC 7609 | |

157

```
Court Name: District of Columbia
Division: 1
Receipt Number: 4616003006
Cashier ID: lwebb
Transaction Date: 03/19/2007
Payer Name: Gebhardt Associates

CIVIL FILING FEE
  For: Gebhardt Associates
  Amount:      $350.00

CHECK
  Check/Money Order Num: 1125
  Amt Tendered: $350.00

Total Due:    $350.00
Total Tendered: $350.00
Change Amt:     $0.00

07-0546

Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged. A
$45 fee will be charged for a
returned check.
```

☐ 385 Property Damage Product Liability

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

VII. REQUESTED IN COMPLAINT   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 300,000.00   Select YES only if demanded in complaint  JURY DEMAND: ☒ YES  ☐ NO

VIII. RELATED CASE(S) IF ANY (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE March 19, 2007   SIGNATURE OF ATTORNEY OF RECORD _Mynel C. Hendricks Jr_

JTC

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.