**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| SANDRA L. AGUILAR, | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0546 (RMU) |
| v. | : | Re Document No.: | 17 |
| KEN SALAZAR, Secretary of the Department of the Interior, | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The defendant[1] is the Secretary of the Department of the Interior ("the Department"), which oversees the National Park Service ("the NPS"). The plaintiff alleges that the defendant intentionally discriminated against her based on her race and/or national origin in violation of Title VII of the Civil Right Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, by not selecting her for an administrative position with the National Capital Region of the NPS. The defendant argues that the NPS lawfully decided to consider only applicants who were current NPS employees. Because the plaintiff has failed to present evidence from which a reasonable jury could conclude that the defendant's asserted reason for not hiring her is merely pretextual, the court grants the defendant's motion for summary judgment.

---

1 The original defendant to this action, Dirk Kempthorne, was the Secretary of the Department of the Interior when this action was instituted. Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes the current Secretary, Ken Salazar, for Kempthorne. FED. R. CIV. P. 25(d) (stating an "officer's successor is automatically substituted as a party" and that "[l]ater proceedings should be in the substituted party's name").

## II. FACTUAL & PROCEDURAL BACKGROUND

On March 10, 2003, the NPS issued an initial vacancy announcement ("Initial Announcement") for the position of Associate Regional Director for Administration for the National Capital Region of the NPS. Def.'s Statement of Facts ("Def.'s Statement") ¶¶ 14-15; Def.'s Mot., Ex. 7. The Initial Announcement specified that applicants must be Department employees and noted that the position was at the GS-15 level. *Id*. On March 31, 2003, in order to comply with internal diversity requirements, the NPS issued an amended vacancy announcement ("Amended Announcement") soliciting applications from current Department employees as well as non-Department applicants and amending the pay level to GS-14/15.[2] Def.'s Statement ¶¶ 17, 21; Def.'s Mot., Ex. 10 & Ex. 12 at 7.

The plaintiff, who was not, and never had been, a Department employee, applied for the position on March 24, 2003.[3] Pl.'s Statement of Facts ("Pl.'s Statement") ¶¶ 7, 30-33; Pl.'s Opp'n, Ex. 5; Def.'s Statement ¶¶ 1, 28. Despite the fact that the plaintiff submitted her application before the NPS issued the Amended Announcement, the NPS decided to consider her application after it issued the Amended Announcement. Def.'s Statement ¶ 29.

All applications for the position were separated into two categories (status applicants who worked for the government at the time they applied and non-status applicants who were not government employees) and assigned numerical rankings with a high score of 100. Def.'s

---

[2] The plaintiff does not contest any of the above facts in her opposition or opposing statement of facts. *See generally* Pl.'s Opp'n; Pl.'s Statement. The court, therefore, treats these facts as conceded. LCvR 7(h) (stating that "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

[3] The defendant indicates that the plaintiff submitted her application on March 26, 2003. Def.'s Statement ¶ 28. The copy of the application packet provided by the plaintiff, however, notes a date of March 24, 2003. Pl.'s Opp'n, Ex. 5. The court need not resolve this discrepancy because whether her application was submitted on March 24, 2003 or two days later is of no consequence to this case.

Statement ¶¶ 48, 59, 61. The plaintiff received a score of 97 and was deemed to be a "best qualified" non-status applicant for the GS-15 level position.[4] *Id*. ¶¶ 61, 63. Upon completion of the ranking process, NPS selecting officials determined that they would only interview those applicants from the status certificates and, within that subset, only those candidates who were NPS employees at the time. *Id*. ¶¶ 80, 81 (explaining that the officials believed that "NPS experience [was] a critical, key attribute for the Position"); *see also* Def.'s Mot., Ex. 8 at 89-90; Ex. 28 at 8-9, 13-14; Ex. 29 at 11-12. As such, the plaintiff was not invited for an interview and Dottie Marshall, a status applicant, was eventually selected for the position. Def.'s Statement ¶¶ 7, 87. The plaintiff believes that she was intentionally excluded from the interview process because of her Hispanic heritage. Compl. ¶ 1. She contends that her surname and appearance make it obvious that she is Hispanic. Pl.'s Statement ¶¶ 4, 14-15 (noting that the plaintiff had met one of the selecting officials in person and concluding that he therefore knew that she is Hispanic[5]).

The plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission, which ultimately granted summary judgment in favor of the defendant. Def.'s

---

4 The NPS categorized the "best qualified" candidates into seven "certificates of eligibles" based on the various status and eligibility levels of the candidates: (1) a certificate for non-status applicants applying at the GS-14 level; (2) a certificate for status applicants applying at the GS-14 level who were then at the GS-13 level; (3) a certificate for status applicants applying at the GS-14 level who were then at the GS-14 level; (4) a certificate for non-status applicants applying at the GS-15 level, which included the plaintiff; (5) a certificate for status applicants applying at the GS-15 level who were then at the GS-14 level; (6) a certificate for status applicants applying at the GS-15 level who were then at the GS-15 level; and (7) a certificate for status applicants who were then at the GS-14 level but had once been at the GS-15 level in their federal career. Def.'s Statement ¶ 68.

5 The plaintiff also points out that one of the selecting officials wrote her husband's surname, Nieto, in the margin of her application. Pl.'s Opp'n at 23. According to the plaintiff, her husband is a well-known Hispanic employee at NPS. *Id*. Nonetheless, the plaintiff has offered no evidence from which a reasonable jury could conclude that the defendant was aware that the plaintiff is Hispanic based on the fact that her husband has a Hispanic surname.

Mot., Ex. 1. The plaintiff filed suit in this court on March 19, 2007. Following discovery, the defendant filed a motion for summary judgment, which the plaintiff opposed. The court turns now to the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

**B. Legal Standard for Discrimination Under Title VII**

To prevail on a claim of discrimination under Title VII in cases in which the defendant fails to present a legitimate, non-discriminatory reason for its actions, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)). In the majority of Title VII cases, however, the employer presents a legitimate, non-discriminatory reason for its actions. *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 493 (D.C. Cir. 2008). In those cases, the question of whether the employee satisfied the first step of the *McDonnell Douglas* test is irrelevant. *Id.* "[T]he McDonnell Douglas framework . . . disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *see also Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow").

Thus, if the defendant presents a legitimate, non-discriminatory reason for its actions, the district court need resolve only one question: "Has the employee produced sufficient evidence

for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494. The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998)). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### C. The Plaintiff Failed to Produce Evidence From Which a Reasonable Jury Could Infer Pretext

The defendant argues that the NPS selecting officials did not run afoul of Title VII by deciding to only interview applicants with prior NPS experience. *See generally* Def.'s Mot. The plaintiff contends that her "non-selection, analyzed in conjunction with the extremely poor and clearly demonstrative statistics of Hispanic under-representation at the National Park Service at the GS-15 and above levels, is wholly conclusive of discrimination," Pl.'s Opp'n at 23-26, that she was significantly more qualified than Marshall, *id*. at 6-13, and that the NPS amended the vacancy announcement with the intent of disqualifying Hispanic applicants, *id*. at 14-21.

#### 1. Statistical Evidence

As an initial matter, the court notes that statistical evidence is generally not conclusive in disparate treatment cases. *Krodel v. Young*, 748 F.2d 701, 710 (D.C. Cir. 1984); *see also Simpson v. Leavitt*, 437 F. Supp. 2d 95, 104 (D.D.C. 2006) (holding that statistical evidence

"alone is insufficient to create an inference of disparate treatment" in individual disparate treatment actions); *Horvath v. Thompson*, 329 F. Supp. 2d 1, 10 (D.D.C. 2004) (noting that "statistical evidence is only one small part of a substantial web of evidence indicating pretext") (quoting *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 553 (7th Cir. 2000)). Furthermore, the court is particularly wary of statistical evidence without proof that the individuals upon whom the statistics were based were similarly situated to the plaintiff. *See Lutes v. Golden*, 62 F. Supp. 2d 118, 128 (D.D.C. 1999) (concluding that, because the plaintiff "failed to identify which of the many individuals listed [were] similarly-situated to himself," his reliance on statistical evidence was "fundamentally flawed"). The plaintiff offers a number of statistics indicating the percentages of various categories of NPS employees (*e.g.*, newly hired, those GS-13 and above and total employees) who are white as compared to those who are Hispanic. Pl.'s Opp'n at 23-26. What the plaintiff fails to address is the proportion of *qualified Hispanic applicants* who were not selected for positions within the NPS to Hispanic applicants actually chosen for comparable positions. *See Whitacre v. Davey*, 890 F.2d 1168, 1172 (D.C. Cir. 1989) (citing *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 311-13 (1977) and *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339-40 n.20 (1977)) (observing that absent evidence of the pool of available and qualified applicants, the court could not know whether the number of selectees over age 40 "was disproportionately small to the pool [of applicants], disproportionately large, or approximately statistically perfect")). Without a relevant basis of comparison, the plaintiff's reliance on the statistics offered is "fundamentally flawed" and cannot be used to support an argument of pretext. *Lutes*, 62 F. Supp. 2d at 128; *see also Horvath*, 329 F. Supp. 2d at 12 (holding that because the plaintiff failed to offer statistics concerning the relevant comparison, the "plaintiff's reliance on statistics do[es] not, as a matter of law or of fact, permit a jury to find

that defendant's proffered nondiscriminatory reason was pretextual"). That is, without knowing how many Hispanic people applied for jobs with the NPS, were qualified to do those jobs and were also not hired, the plaintiff's proffered statistics lack contextual relevance. *See Horvath*, 329 F. Supp. 2d at 10.

**2. Comparative Qualifications**

The plaintiff next emphasizes her belief that she was more qualified for the position than the selected applicant.[6] Pl.'s Opp'n at 6-13. The defendant maintains that the plaintiff's subjective comparison of qualifications is "immaterial." Def.'s Reply at 7. Indeed, a plaintiff's belief in the superiority of her own skills and qualifications is not sufficient evidence to survive summary judgment. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 144 (D.D.C. 2003) (stating that "the plaintiff's opinion of the relative merits of her credentials as opposed to those of the selected individuals are irrelevant"); *see also Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd* 298 F.3d 989, 997 (D.C. Cir. 2002); *Smith v. Chamber of Commerce of the United States*, 645 F. Supp. 604, 608 (D.D.C. 1986). Thus, the plaintiff's extensive review of her qualifications as contrasted with Marshall's does not afford the court a relevant basis of analysis.

---

6 The plaintiff provides a lengthy but summary list of her credentials. Pl.'s Opp'n at 9-13. For instance, she states that "[d]uring the course of her positions she . . . analyzed existing operating programs and human resources policies; developed, reviewed and coordinated operating policy," but she does not reveal what job she held while gaining that experience, nor does she indicate with specificity the experience gained or how it is relevant to the NPS position. *Id*. at 10. And, although she sporadically references portions of her application, the plaintiff makes numerous claims about her qualifications and experiences without providing citations to evidence in the record (e.g., she states without citation that she "developed the budget formulations for headquarters and regional offices"). *Id*. Additionally, the plaintiff provides no citation for her brief description of Marshall's qualifications, *id*. at 13, n. 6, and the court declines to sift through the record to locate evidence that may support the plaintiff's claims, *Albrechtsen v. Bd. of Regents of Univ. Sys.*, 309 F. 3d 433, 436 (7th Cir. 2002) (stating that "[j]udges are not like pigs, hunting for truffles buried in the record") (internal citation omitted).

**3. Alleged Exclusion of Hispanic Applicant**

The plaintiff's final contention is that the NPS amended the vacancy announcement to exclude Hispanic applicants. Pl.'s Opp'n at 14-21. The defendant submits that the plaintiff's argument on this point is untenable because she offers no evidence or citations to the record in support of her position.[7] Def.'s Reply at 11-13. The defendant engages in a lengthy description of the process of reviewing, ranking, interviewing and selecting qualified candidates from the list of applicants. *See* Def.'s Mot. at 5-8, 11-19; Def.'s Statement ¶¶ 10-28, 33-35, 38-40, 42-60, 65, 67-70, 78-88, 90-93, 97. The plaintiff fails, however, to specifically address the defendant's stated facts on this matter in her opposing statement of facts. *See generally* Pl.'s Statement. Moreover, her statement of facts contains a total of four citations to the record, none of which address the issue of whether the vacancy announcement was amended to exclude Hispanic applicants. *Id.* ¶¶ 2 (referencing an employment statistic); 7 (citing to the plaintiff's application for the date of submission and general information contained therein); 11 (relying on a collection of data to support the fact that only one Hispanic female applied for the position; 24 (referring to the plaintiff's application as evidence of the plaintiff's employment in the previous two years). Because the plaintiff did not provide facts to support her theory that the NPS amended the vacancy announcement to exclude Hispanic applicants, the court can only treat this point as conceded. LCvR 7(h) (stating that "the court assume that facts identified by the moving party in

---

[7] The defendant references a declaration prepared by Arnold J. Gerber, designated by the plaintiff as an expert in human resources. *See* Def.'s Mot. at 4; *see also* Def.'s Mot., Ex. 3. The defendant attaches this declaration to its motion and argues that Gerber is not qualified as an expert and that his opinion is too summary and broad to support the plaintiff's claim. The plaintiff does not respond to the defendant's position on her expert and, in fact, does not once mention her expert in opposing the defendant's motion. *See generally* Pl.'s Opp'n. The court, therefore, concludes that the plaintiff has conceded this point and is not relying on Gerber's declaration. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (noting that arguments not addressed are treated as conceded).

its statement . . . are admitted, unless such a fact is controverted in the statement . . . filed in opposition to the motion"); *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (recognizing that district courts are not obligated to sift through the record to locate supporting evidence for a party's claim and that the court "is to deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's [] statement"). In conclusion, the court determines that the plaintiff has failed to present any evidence from which a reasonable jury could conclude that the NPS's decision to interview only status applicants was a pretext for discrimination. *See Brady*, 520 F.3d at 494.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of June 2009.

RICARDO M. URBINA
United States District Judge